UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,                      Criminal No 17-20737

v.                                Hon. Linda V. Parker

Rufus Culp

       Defendant.
_____/

**United States' Response Opposing
the Defendant's Motion for Compassionate Release**

Rufus Culp is a multi-convicted felon, who has not been deterred by probationary sentences, long state prison sentences, federal prison sentences or federal supervised release. He was convicted for being a felon in possession of a firearm and was sentenced to 35 months imprisonment. (R. 27: Judgment). Culp began serving his current sentence on May 1, 2019 and he is scheduled to be released in October 2021. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). His motion should be denied.

Culp does not qualify for compassionate release. First, because has not satisfied the mandatory exhaustion requirement in 18 U.S.C.

1

§ 3582(c)(1)(A), the Court is barred from addressing his argument on the merits. *United States v. Alam*, ___ F.3d ___, No. 20-1298, 2020 WL 2845694 (6th Cir. June 2, 2020). Culp also does not satisfy the substantive requirements for compassionate release. "[T]he mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Although Culp's heightened risk from Covid-19 based on his obesity qualifies as an "extraordinary and compelling reason[]" for release under § 1B1.13(1)(A) & cmt. n.1(A), Culp is not otherwise eligible for release. Culp's offense and criminal history make him a danger to the community, which precludes release under USSG § 1B1.13(2), because Rufus Culp has consistently engaged in new criminal activities for over a decade. Since 1996, even though he had been deemed a "prohibited person," he has continued to engage in criminal activities that involve firearms and he disregards court order. And the § 3553(a) factors—which the Court must also consider under § 3582(c)(1)(A)—likewise do not support release because Culp lacks respect for the law which is demonstrated by his criminal history, and decision to continue to

2

engage in criminal activities.

## Background

While on routine patrol in May 2016, Detroit police officers observed Rufus Culp run a stop sign while speeding. Three police officers stopped Culp's car for the traffic violation. As they stopped the vehicle, officers observed Culp fidgeting with the light dial area on the driver's side of his vehicle. Officers approached Culp's car and ordered him out. As they approached, they smelled burnt marijuana emanating from the car. As Culp exited his car, officers saw chunks of loose marijuana on the driver's side floorboard. One officer told Culp his car would be searched because of the marijuana, obtained his license, and escorted him to the back of the vehicle. Another began searching the car, and found a .45 caliber firearm and 13.2 grams of cocaine hidden in the driver's side light-dial area. At the same time, Culp ran away from the scene, and officers found him after a short foot chase.

Culp was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. 922(g). He entered a Rule 11 Plea Agreement, and

this Court sentenced him to 35 months imprisonment, a variance from the guidelines of 70-87 months imprisonment. (R.27: Judgment).

Culp began serving his prison sentence on May 1, 2019, and is currently incarcerated at FCI Milan. He is 41 years old, and his projected release date is October 19, 2021. He suffers from obesity. Culp has moved for compassionate release, citing his medical conditions and the Covid-19 pandemic. In his motion, Culp states that he wrote to the warden to request compassionate release and has not received a response (R. 31: Mot., 1), however, the Bureau of Prisons has no record of such request.

## Argument

**I.    The Bureau of Prisons has responded to Covid-19 by protecting inmates and increasing home confinement.**

**A.    The Bureau of Prisons' precautions have mitigated the risk from Covid-19 within its facilities.**

The Bureau of Prisons has reacted quickly to confront Covid-19's spread within its facilities. *Wilson v. Williams*, ___ F.3d ___, No. 20-3447, 2020 WL 3056217, at *2 (6th Cir. June 9, 2020). For over almost a decade, the Bureau of Prisons has maintained a detailed protocol for responding to a pandemic. Consistent with that protocol, the Bureau of

4

Prisons began planning for Covid-19 in January 2020. *Wilson*, 2020 WL 3056217, at *2.

On March 13, 2020, the Bureau of Prisons began modifying its operations to implement its Covid-19 Action Plan and minimize the risk of Covid-19 transmission into and inside its facilities. *Id.*; *see* [BOP Covid-19 Modified Operations Website](). Since then, as the worldwide crisis has evolved, the Bureau of Prisons has repeatedly revised its plan. *Wilson*, 2020 WL 3056217, at *2. To stop the spread of the disease, the Bureau of Prisons has restricted inmate movement within and between facilities. *Id.* When new inmates arrive, asymptomatic inmates are placed in quarantine for a minimum of 14 days. *Id.* Symptomatic inmates are provided with medical evaluation and treatment and are isolated from other inmates until testing negative for Covid-19 or being cleared by medical staff under the CDC's criteria. *Id.*

Within its facilities, the Bureau of Prisons has "modified operations to maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing quarantine and isolation procedures." *Id.* Staff and inmates are issued face masks to wear in public areas. *See* [BOP FAQs: Correcting Myths

5

and Misinformation. Staff and contractors are screened for symptoms, and contractors are only permitted to access a facility at all if performing essential service. *Wilson*, 2020 WL 3056217, at *2. Social and legal visits have been suspended to limit the number of people entering the facility and interacting with inmates. *Id.* But to ensure that relationships and communication are maintained throughout this disruption, the Bureau of Prisons has increased inmates' telephone allowance to 500 minutes per month. Legal visits are permitted on a case-by-case basis after the attorney has been screened for infection.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from Covid-19 completely, despite its best efforts. But the Bureau of Prisons' measures will help federal inmates remain protected from Covid-19 and ensure that they receive any required medical care during these difficult times.

## II. The Court should deny Culp's motion for compassionate release.

Culp's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's

6

sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, ___F.3d ___, No. 20-1298, 2020 WL 2845694, at *1 (6th Cir. June 2, 2020). And as the Sixth Circuit recently held, this statutory exhaustion requirement is mandatory. *Alam*, 2020 WL 2845694, at *1–*4.

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent with" the Sentencing Commission's policy statements. 18

U.S.C. § 3582(c)(1)(A). As with the identical language in § 3582(c)(2), compliance with the policy statements incorporated by § 3582(c)(1)(A) is mandatory. *See Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014). To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2).

*Third*, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

### A. Binding authority prohibits the Court from granting release, because Culp has not satisfied the statutory exhaustion requirement.

The Court should dismiss Culp's motion, because it appears he has not satisfied the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Until recently, only the Bureau of Prisons could move for compassionate release. The First Step Act of 2018 amended the statute, permitting defendants to move for it too. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018).

But the provision permitting a defendant-initiated motion includes an exhaustion requirement. *Id.* A district court may not grant a defendant's motion for compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, ___F.3d ___, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020). As the Sixth Circuit recently held in *Alam*, this statutory exhaustion

9

requirement is "a mandatory condition" that "must be enforced" when the government raises it. *Id.* at *1–*4; *accord United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020).

Here, BOP has no record of Culp's request and Culp did not provide any written documentation of his request to the Warden or attach anything to his motion. Therefore it appears Culp did not comply with § 3582(c)(1)(A)'s mandatory exhaustion requirement. Culp's motion for compassionate release should therefore be dismissed for failure to exhaust. *Alam*, 2020 WL 2845694, at *5.

### B. Culp is not eligible for compassionate release under the mandatory criteria in USSG § 1B1.13.

Even if Culp had exhausted his administrative remedies, compassionate release would be improper. Compassionate release must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under § 3582(c)(1)(A), as well developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t).

Because the Sentencing Commission has fulfilled Congress's directive in USSG § 1B1.13, that policy statement is mandatory. Section 3582(c)(1)(A)'s reliance on the Sentencing Commission's policy statements mirrors the language governing sentence reductions under 18 U.S.C. § 3582(c)(2) for retroactive guideline amendments. *Compare* § 3582(c)(1)(A) *with* § 3582(c)(2). When Congress uses the same language in the same statute, it must be interpreted in the same way. *Marshall*, 954 F.3d at 830. In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014); *accord Dillon v. United States*, 560 U.S. 817, 830 (2010).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not amend the substantive requirements for release. *United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *2–*3 (10th Cir. Mar. 26, 2020); *United States v. Mollica*, No. 2:14-CR-329, 2020 WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020). Section 1B1.13 remains binding.

Section 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need. That policy statement

11

limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in [Program Statement 5050.50](). USSG § 1B1.13 cmt. n.1.

The Covid-19 pandemic does not, by itself, qualify as the type of inmate-specific condition permitting compassionate release. The Bureau of Prisons has worked diligently to implement precautionary measures reducing the risk from Covid-19 to Culp and other inmates. *See Wilson v. Williams*, ___ F.3d ___, No. 20-3447, 2020 WL 3056217, at *2, *8 (6th Cir. June 9, 2020). Thus, "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *cf. Wilson*, 2020 WL 3056217, at *11.

Culp's medical records, however, confirm that he has obesity, which the CDC has identified as a risk factor for Covid-19. Given the heightened risk that Covid-19 poses to someone with obesity, Culp has

12

satisfied the first eligibility threshold for compassionate release during the pandemic. *See* USSG § 1B1.13(1)(A) & cmt. n.1(A).

But Culp remains ineligible for compassionate release because he is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." It thus prohibits the release of violent offenders, including most drug dealers. *See United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010); *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020). It also bars the release of many other defendants. An evaluation of dangerousness under § 3142(g) requires a comprehensive view of community safety—"a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam). So even many "non-violent" offenders—such as those who have been involved in serial or significant fraud schemes—may not be released under § 3582(c)(1)(A). USSG § 1B1.13(2);

Adhering to § 1B1.13(2) is especially important given the current strain on society's first responders and the rise in certain types of crime during the Covid-19 pandemic. Police departments in many cities have

13

been stretched to their limits as officers have either contracted Covid-19 or been placed in quarantine. Some cities, including Detroit, have seen [spikes in shootings and murders](). There are real risks to public safety right now, and those risks will only increase if our community is faced with a sudden influx of defendants who have a history of failing to abide by the law, like Culp.

Because Culp's release would endanger the community, § 1B1.13(2) prohibits reducing his sentence under § 3582(c)(1)(A). Since 1996, Culp has been in and out of prison, and on probation for various felony offenses. Culp was never deterred by his past terms of incarceration and court supervision, and instead he continued to engage in new criminal activities. For example, after receiving a HYTA sentence for breaking and entering a vehicle in 1996, Culp violated his probation and received an 18 month custodial sentence. A little over a year later, Culp was convicted of armed robbery, assault with intent to great bodily harm, and weapons offenses, after he beat a victim with a handgun for $82.00. Culp received a substantial prison sentence—5 to 10 years—yet he was not deterred from engaging in more criminal activity. In 2005, he received his first federal sentence, for another weapons offense. A term

14

of custody in federal prison and federal supervision still did not deter Culp. He found a way to acquire another firearms offense in 2009, and received another substantial prison sentence. Culp has a clear affinity for firearms and it shows in his criminal history. Since 1996, even though he had been deemed a "prohibited person," all of his subsequent felony convictions involved firearms. Culp's inability to be deterred from criminal activities makes him a danger to the community.

Culp is not eligible for compassionate release.

### C. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that he is not dangerous, he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *See United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020) ("The § 3553(a) factors . . . weigh against his request for compassionate release."); *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v.*

15

*Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). So even if the Court were to find Culp eligible for compassionate release, the § 3553(a) factors should still disqualify him.

As mentioned above, Culp has continually engaged in criminal activities for a decade and tends to use firearms to commit his crimes. His inability to abide by the terms of court supervision and to respect the law make him a continued danger to the community.

### III. If the Court were to grant Culp's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Culp's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

## Conclusion

Culp's motion should be denied.

Respectfully submitted,

16

                                           MATTHEW SCHNEIDER
                                           United States Attorney

                                           */s Jihan M. Williams*
                                           JIHAN M. WILLIAMS
                                           Assistant United States Attorney
                                           211 West Fort Street, Suite 2001
                                           Detroit, Michigan 48226-3211
                                           (313) 226-9250
                                           Jihan.williams@usdoj.gov

Date: August 4, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent a copy of the document via notification to:

- John Minock, Attorney for Rufus Culp

        */s Jihan M. Williams*
        JIHAN M. WILLIAMS
        Assistant United States Attorney
        211 West Fort Street, Suite 2001
        Detroit, Michigan  48226-3211
        (313) 226-9250
        Jihan.williams@usdoj.gov