UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                    Criminal Case No. 17-20737
v.                                      Honorable Linda V. Parker

RUFUS CULP,

        Defendant.
_____/

## OPINION AND ORDER GRANTING RENEWED MOTION FOR COMPASSIONATE RELEASE (ECF NO. 32)

On December 11, 2018, Defendant Rufus Culp pleaded guilty pursuant to a Rule 11 Plea Agreement to one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 23.)  On March 13, 2018, the Court sentenced Defendant to 35 months of incarceration, followed by 18 months of supervised release.  (*See* ECF No. 27.)  The matter is presently before the Court on Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582, which the Court construes as a motion for compassionate release.  (ECF No. 32.)  The motion has been fully briefed.  (ECF Nos. 34, 35, 38.)

### Applicable Law

A defendant may move for compassionate release under § 3582(c)(1)(A) only after "fully exhaust[ing] all administrative rights to appeal a failure of the

Bureau of Prisons to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Further, under the statute, a court may reduce a defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C.] Section 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that a reduction is consistent with applicable statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of proving that "extraordinary and compelling reasons" exist to justify release under the statute. *See United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990).

Here, the Government does not dispute that Defendant properly exhausted all administrative remedies.[1] (ECF No. 35.) Nor does the Government dispute that Defendant's obesity (BMI 33.4) places him at heightened risk from COVID-19 and therefore qualifies as an "extraordinary and compelling reason[]" for release under

---

[1] The Government initially indicated that the Bureau of Prisons had no record of the request for release Defendant submitted to his warden. (ECF No. 34 at Pg ID 157.) The Government therefore maintained that Defendant had not exhausted his administrative remedies. (*Id*. at 160.) In a supplemental brief, however, the Government advised that Defendant's June 9, 2020 request to the warden had been located. (ECF No. 35)

2

the statute.[2] (ECF No. 34 at Pg. ID 155.) The Government nevertheless maintains that a reduction of Defendant's sentence is not consistent with the Sentencing Commission's applicable policy statements. (ECF No. 34.) Specifically, the Government argues that he is a danger to the community. (*Id*. at Pg ID 155-56, 167-68.)

## Analysis

The factors set forth in 18 U.S.C. § 3553(a) include a defendant's history and characteristics; the nature and circumstances of the crimes; due consideration of the seriousness of the crimes; promoting respect for the law; providing just punishment; affording adequate deterrence; protecting the public from further crimes by the defendant; and providing him with any necessary correctional services and treatment. *See* 18 U.S.C. § 3553(a).

---

[2] As it routinely does in response to the many compassionate release motions filed by incarcerated individuals during the COVID-19 pandemic, the Government maintains that despite Defendant's heightened risk, the Bureau of Prisons has instituted measures to mitigate the risk of the virus spreading within its facilities. (ECF No. 34 at Pg ID 157-59.) This Court, and many other courts in this District, have addressed the Government's contentions in other decisions, specifically with respect to the Milan facility where Defendant is incarcerated, concluding that whatever measures have been taken have not eliminated—and probably cannot given the communal environment—the spread of the virus and that the BOP's testing policies do not provide an accurate picture of the exposure risk at its facilities. *See, e.g.*, *United States v. Nazzal*, -- F. Supp. 3d --, 2020 WL 3077948, at *4 (E.D. Mich. June 10, 2020); *United States v. Haynes*, No. 14-20083, 2020 WL 4696601, at *3 (E.D. Mich. Aug. 13, 2020). For the reasons previously stated in those decisions, the BOP's efforts do not justify denying Defendant's motion.

The Government emphasizes Defendant's criminal history in support of its assertion that he would endanger the community if released early.  Defendant in fact has been convicted of several past felonies, most recently his current and two prior felon-in-possession charges.  However, Defendant's remaining two convictions, which include the most violent components of his criminal history, arose when he was a teenager.  He is now 41-years old.

Moreover, Defendant was released on bond for almost three years while this matter was pending.  He accumulated no arrests or violations during that period.  He was employed full-time as a hi/lo driver and plans to return to that job upon his release.

Defendant's family circumstances also warrant a reduction.  He is the father of two sons, who were two and fourteen-years old as of the date of the Presentence Investigation Report ("PSR").  (PSR ¶ 38.)  Defendant's teenage son resided with Defendant and Defendant's mother.  (*Id*.)  The boy's mother died in late 2018.  (*Id.* ¶ 39.)  Defendant is involved in both of his sons' lives.  (*Id.* ¶ 40.)

In addition to his mother and children, Defendant has the support of his fiancé Keisha Jackson and several other family members.  Defendant has been dating Ms. Jackson for approximately fifteen years and they were engaged in November 2018.  He plans to reside with Ms. Jackson upon his release.

4

Finally, Defendant is projected to be released from prison on October 19, 2021. He will be eligible for release to a halfway house next month. Any benefit of keeping Defendant incarcerated in the interim is outweighed by the risk of serious outcomes if he contracts COVID-19. Moreover, the sentence that Defendant has served, combined with the period of supervised release that will follow, appropriately "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a).

Thus, the Court finds that the factors set forth in § 3553(a) warrant a reduction of Defendant's sentence and the policy statements issued by the Sentencing Commission before the passage of the First Step Act include provisions broad enough to cover the aforementioned circumstances.

## Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582. (ECF No. 32.) The Court reduces Defendant's sentence to time served. The Bureau of Prisons is authorized to delay execution of this Order for up to seven days after its issuance to make necessary arrangements related to Defendant's release. The period of supervised release remains 18 months.

Upon his release, Defendant shall reside at Keisha Jackson's residence in Clinton Township, Michigan, where Defendant shall remain in self-quarantine for 14 days.  Defendant shall notify the Probation Department for the Eastern District of Michigan within 24 hours of his arrival at Ms. Jackson's residence and is directed to follow the instructions of the assigned probation officer.

Upon his release from custody, Defendant will be subject to the same conditions of release imposed in his original sentence.  Upon entry of this Order, defense counsel shall immediately contact the Probation Department to coordinate and facilitate enforcement of Defendant's release conditions.

**IT IS SO ORDERED**.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: September 14, 2020